# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT FORMELLA, | ) |
|       Plaintiff, | ) |
| v. | ) No. 13 C 3032 |
| PATRICK R. DONAHOE, Postmaster General, United States Postal Service, | ) Judge Virginia M. Kendall |
|       Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Formella, a white male, sued his employer, the Postmaster General of the United States Postal Service, for discriminating against him based on his age and his race and for retaliating against him for filing the claims of discrimination. Defendant moved for summary judgment on all counts. Because the evidence does not support Formella's claim, this Court grants summary judgment in favor of Defendant.

## BACKGROUND[1]

Plaintiff Robert Formella sued defendant Patrick R. Donahoe, in his official capacity as the Postmaster General of the United States Postal Service ("USPS"), alleging racial discrimination, age discrimination, and retaliation. Formella, who is white, worked for USPS in Chicago for 31 years. (*See* Def.'s Rule 56.1 Stmt. of Facts ("Def.'s Stmt.") ¶ 1.) He became a postal police officer in 1998 and a sergeant in 2003. (*Id.*) In his capacity as sergeant, Formella supervised a "tour" (shift) of six

---

[1]/ The following facts are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted.

to ten officers, responded to incidents, dispatched officers, and made schedules. (*Id.* at ¶ 2.) Depending on the tour, a sergeant was eligible for "premium pay" for work performed on Sundays and after 6:00 p.m. (*Id.* at ¶¶ 5, 8.) In 2009, while on "Tour 1," Formella began the process to voluntarily retire. (*See id.* at ¶ 4; Pl.'s Resp. to Def.'s Stmt. ¶ 4.) He later changed his mind and claims that USPS would not allow him to withdraw his retirement application. (*See* Def.'s Stmt. ¶ 4; Pl.'s Resp. to Def.'s Stmt. ¶ 4.) Formella filed an administrative appeal, which the parties ultimately settled. (Def.'s Stmt. ¶ 5.) Pursuant to the settlement, Formella returned to work as a police sergeant on "Tour 2," which unlike Tour 1, was not eligible for premium pay. (Def.'s Stmt. ¶ 5.)[2]

## I. The April 2011 Vacancy Announcement

In April 2011, one of Formella's supervisors — Inspector in Charge ("INC") Thomas Brady — posted a vacancy announcement for a postal police supervisor. (*Id.* at ¶ 6.) The vacancy was created when Sergeant Loretta Williams retired. (*Id.* at ¶ 7.) Formella had known for some time that Sergeant Williams planned to retire, but he elected not to request a transfer because it offered the same benefits as his current position. (*Id.*) The position as posted, however, was eligible for premium pay. (*Id.*) After seeing the posting, Formella told his direct supervisor, Captain Douglas Williams (African American), that he was interested in the position. (*Id.* at ¶ 8.)[3] Captain Williams called "headquarters" to see whether Formella could "non-competitively" transfer into the position,

---

[2]/ Formella disputes USPS's statement that he "does not allege that this resolution was discriminatory or retaliatory." (Def.'s Stmt. ¶ 5; Pl.'s Resp. to Def.'s Stmt. ¶ 5.) The portion of his deposition that he cites does not support his denial. (*See* Formella Dep., attached as Ex. A to Pl.'s Stmt. of Add'l Facts, at 67 (testifying that he believed that USPS violated its retirement policy, but did not do so for a discriminatory or retaliatory reason).)

[3]/ Captain Williams was Formella's direct supervisor for most of the time period relevant to this lawsuit. (*See* Def.'s Stmt. at ¶ 3.) In early 2013, Lieutenant Nieters (white) became Formella's manager, making Williams his "second-level" supervisor. (*Id.*)

notwithstanding the job posting. (*Id.*) Formella was told that he could either apply for a non-competitive transfer or elect to compete for the position by responding to the posting. (*Id.*) Formella later asked INC Brady, the decision-maker, for a non-competitive transfer. (*Id.* at ¶ 9.) The parties agree that Brady, who is white, had discretion to withdraw the posting and approve Formella's transfer. (*Id.*) He testified, however, that he "generally will have people go through the process — the interview process." (*See* Brady Dep., attached as Ex. B to Pl.'s Stmt. of Add'l Facts, at 58; *see also* Pl.'s Resp. to Def.'s Stmt. ¶ 9.) In this case, Brady told Formella that he had to compete for the position because: (1) the position was already posted; and (2) he had not previously asked Captain Williams for the position. (Def.'s Stmt. ¶ 9.)

Three candidates applied for the vacancy: Formella (white, over 50 years old), Officer Fields (African American, over 40), and Officer Brown (African American, over 40). (*Id.* at ¶ 10.) Brady conducted interviews in order to choose among the candidates, all of whom were qualified for the position. (*Id.*) He asked the candidates the same interview questions and rated their answers on a scale of 0 to 3. (*Id.* at ¶ 11.) Formella rated the lowest of the three candidates; Fields ranked the highest. (*Id.*; *see also id.* at ¶ 17.) The parties dispute whether Brady knew the candidates' ages and/or retirement eligibility. Viewing the evidence in the light most favorable to Formella, Brady was aware of facts that would permit him to accurately estimate his age. (*See* Pl.'s Resp. to Def.'s Stmt. ¶ 11.) During his interview, Formella repeatedly used the phrase "RHIP" ("rank has its privileges"), leading Brady to conclude that he felt entitled to the position because of his superior rank. (*See* Def.'s Stmt. ¶ 16.) Also, according to Brady, Formella's answers indicated that he was not interested in the position itself — just the increased pay. (*Id.* at ¶ 13 (Formella stated that he was the best candidate for the position because he "would benefit financially from the move"); *see also*

*id.* at ¶ 14 (Formella stated that his short-term goal was to return to school and work in the firearms industry).) Formella did not know the answers to some of Brady's questions, and answered other questions incompletely. (*Id.* at ¶ 13.) Fields, by contrast, was well prepared and answered Brady's technical and situational questions effectively. (*Id.* at ¶¶ 17-18.) Brady hired Fields for the position. (*Id.* at ¶ 19.)

## II. Formella's Equal Employment Opportunity ("EEO") Complaints

### A. Formella's Initial EEO Complaint

Formella filed an informal EEO complaint on July 4, 2011 alleging that Brady had discriminated against him because of his race and age. (*Id.* at ¶ 30; *see also* Formella Dep., attached as Ex. 3 to Def.'s Stmt., at 40.) His formal complaint, dated October 14, 2014, added a claim against Captain Williams for retaliation. (*See* EEO Compl. of Discrim. in the Postal Serv. ("October 2011 EEO Complaint"), dated October 14, 2011, Case No. 66-000-0015-11, attached as Ex. 4 to Def.'s Stmt.) Shortly after Formella filed his informal EEO complaint, Captain Williams began requiring salaried sergeants to punch a time clock when they arrived at work after he received complaints about sergeants arriving late. (*See* Def.'s Stmt. at ¶ 20; Pl.'s Stmt. of Add'l Facts ¶ 1.) Formella alleged that Captain Williams instituted the change in retaliation for his informal EEO complaint. (*See* Oct. 2011 EEO Compl. at 15-16.) He further alleged that Captain Williams scrutinized his conduct more closely after he filed the complaint. At a staff meeting in August 2011, Captain Williams verbally warned Formella about his use of profanity. (Def.'s Stmt. ¶ 20; Oct. 2011 EEO Compl. at 16.) Captain Williams started "go[ing] out of his way to point out errors such as placing an 's' or 'ed' on a word in an incident report which he would [not] have corrected in the past." (Oct. 2011 EEO Compl. at 16; *see also* Pl's Stmt. of Add'l Facts ¶ 4.) Finally, although difficult to

decipher, the court construes his EEO complaint to allege that Williams gave him contradictory instructions regarding attendance forms. (*Id.* at 17.)[4]

## B. Formella's Second EEO Complaint

In December 2012, Formella filed a second EEO complaint against Williams, only, alleging additional acts of retaliation. (*See* Def.'s Stmt. ¶ 30; EEO Compl. of Discrim. in the Postal Serv. ("December 2012 EEO Complaint"), dated Dec. 14, 2012, Case No. 66-000-0025-12, attached as Ex. 15 to Def.'s Stmt.) Formella was on extended sick leave from May 2012 to August 2012. (Def.'s Stmt. ¶ 26.) His doctor gave him a note stating that he could return to work on August 20, 2012 "without any restrictions." (*See* Stmt. of Incident/Action, attached to Dec. 2012 EEO Compl., at 1; see also Pl.'s Stmt. of Add'l Facts ¶ 6.) Captain Williams rejected the note purportedly because, contrary to USPS's Employee and Labor Relations Manual, the note did not state that the doctor had read Formella's job requirements and found him fit for duty. (Def.'s Stmt. ¶ 26.)[5] Formella, at Williams's direction, took an additional week of sick leave to obtain the necessary authorization. (Pl.'s Stmt. of Add'l Facts ¶ 6; Stmt. of Incident/Action at 1-2.) He submitted a revised note and returned to work on August 27, 2012. (Stmt. of Incident/Action at 2.) Upon his return, Williams "gave [him] forty hours of LWOP [leave without pay]" even though Formella had

---

[4]  Formella does not rely on this allegation in support of his retaliation claim in this case. (*See* Pl.'s Stmt. of Add'l Facts ¶¶ 1-14.)

[5]  Formella contends that Captain Williams's rejection was contrary to USPS's policy. (*See* Pl.'s Stmt. of Add'l Facts ¶ 6.) The only evidence he cites for this statement is his own ambiguous testimony. (*See id.*) Formella testified that after the release of an unidentified Seventh Circuit decision, "the postal service said they would no longer require employees to bring anything other than their doctor's statement, their medical provider, as long as it said they can return to work without restrictions." (Formella Dep. at 237-38.) This does not necessarily mean that USPS may cannot require evidence that the physician understands the nature of the position to which the employee is returning.

used his accrued sick leave.  (*Id.* at 3.)  Williams said that it was a mistake; Formella accused him of deliberately misclassifying his absence.  (*Id.*)

Formella also alleged in his complaint that Captain Williams told him to attend a management meeting in his police uniform.  (*Id.*)  The morning of the meeting, Williams "humiliated" Formella by directing him to change into business casual attire for the management meeting.  (*Id.*) Formella explained that his only available clothes were casual.  (*Id.* at 4.)  Later, at the meeting itself, Williams told the group that sergeants must wear "business attire" during management meetings, causing Formella "further humiliation."  (*Id.* (Williams's statement "caused further humiliation in front my peers, as I was the only one not in business attire due to his request.").)  (*Id.*)

### C. USPS's Decision

On January 17, 2013, USPS issued a decision denying Formella's discrimination and retaliation claims.  (*See* Final Agency Decision, attached as Ex. F to Pl.'s Stmt. of Add'l Facts, at 24.)  Although ostensibly a ruling on his October 2011 EEO Complaint only, the opinion also addressed Formella's claims in his December 2012 EEO Complaint. (*See id.* at 1 n.1, 9, 17-22.)  USPS also addressed several alleged acts of retaliation that he had not included in either complaint.  (*See id.* at 9.)  Formella relies on three of those allegations in this lawsuit: (1) Williams revoked his authority to program access-badges using USPS's "ePACS" system;  and (2) he was the only sergeant that Williams required to perform carrier safety checks, work ordinarily performed by

officers. (*See id.*; *see also* Pl.'s Stmt. of Add'l Facts ¶¶ 7, 13.) Formella filed this lawsuit within 90 days after USPS's decision denying his administrative claim.[6] *See* 29 C.F.R. § 1614.407.

**DISCUSSION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe "all facts and reasonable inferences in the light most favorable to the nonmoving party." *See Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 728 (7th Cir. 2014). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). When the non-movant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the nonmovant's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski*, 712 F.3d at 1168 (quoting *Celotex*, 477 U.S. at 322).

**I.      Failure to Exhaust Administrative Remedies.**

USPS argues that Formella failed to exhaust his administrative remedies with respect to certain claims. "Before filing suit under Title VII, a federal employee must exhaust his administrative remedies." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). "[T]he

---

[6]      Formella filed two other EEO complaints in 2013 and 2014, respectively. He does not address the defendant's argument that he has not exhausted his administrative remedies with respect to those complaints. (See Def.'s Mem. In Supp. of Summ. J. ("Def.'s Mem.") at 7.) Indeed, he does not address those complaints anywhere in his summary judgment materials. Thus, he has waived any claims based upon the allegations in his 2013 and 2014 complaints. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (failure to offer opposition to argument constitutes waiver).

scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Id.* at 1099-1100. A claim is within the scope of the administrative charge if it was "brought to [the agency's] attention," even if the agency did not "actually consider[] or dispose[] of a given claim." *Id.* at 1100.[7] USPS correctly points out that Formella did not allege in any of his EEO complaints that Captain Williams: (1) barred him from entering his own time, (*see* Pl.'s Stmt. of Add'l Facts ¶ 3); and (2) routinely denied his overtime requests, (*see id.* at ¶¶ 10-11). (*See* Def.'s Mem. at 8-9.) These allegations are not reasonably related to his administrative charges. They implicate the same individual (Captain Williams), but different conduct than Formella alleged in his EEO complaints. *See Reynolds*, 737 F.3d at 1100 ("[T]o be 'like or reasonably related to' an administrative charge, the relevant claim and the administrative charge must, at minimum, describe the same conduct and implicate the same individuals.") (citation and internal quotation marks omitted). Formella's response to USPS's motion ignores this argument, waiving any objection that he might have raised. *See G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2008) ("We have repeatedly held that a party waives an argument by failing to make it before the district court.").

USPS also argues that Formella did not exhaust his hostile work environment claim. (*See* Def.'s Mem. at 17, n.2; Def.'s Reply at 8.) During his administrative case, Formella argued that Williams created a hostile work environment in retaliation for his EEO complaints. (*See* Final

---

[7] Applying this principle, the court rejects USPS's argument that the issues it accepted for investigation limit the scope of Formella's claim. (See Def.'s Mem. at 8.) Formella alleged in his October 2011 EEO Complaint that Brady denied his request for a non-competitive transfer because of his age and race. (See Oct. 2011 EEO Compl. at 6.) The fact that USPS did not specifically designate that issue for investigation is irrelevant. *See Reynolds*, 737 F.3d at 1100.

Agency Decision at 17-24.) In this case, Formella claims that racial animus motivated some of the same actions. (*See* Pl.'s Resp. at 4-8.) The two claims involve the same individual (Captain Williams) and the same conduct (e.g., Williams's decision to revoke Formella's ePACS access). *See Reynolds*, 737 F.3d at 1100. Formella has exhausted his administrative remedies with respect to his hostile work environment claim.

II. **Whether Formella Filed a Timely Administrative Claim Regarding His Request for a Non-Competitive Transfer**

USPS argues that Formella's claim that Brady wrongly refused his non-competitive transfer request was untimely. (Def.'s Mem. at 7.) A federal employee must initiate an administrative claim within 45 days after the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."). USPS argues that the 45-day period was triggered on May 6, 2011, the day that Brady told Formella that he had to compete with other candidates to fill the vacancy. He filed his informal EEO complaint on July 4, 2011, more than 45 days later. The court is reluctant to award summary judgment on this basis, even though Formella fails to address USPS's argument. Viewing the evidence in the light most favorable to Formella, he would not have suspected a discriminatory motive until Brady hired a younger African American officer. *See* 29 CFR § 1614.105(a)(2) ("The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows . . . that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred . . . ."). Also, there is no evidence that USPS objected that Formella's claim was untimely in the underlying administrative case. *See Ester*

*v. Principi*, 250 F.3d 1068, 1071-72 (7th Cir. 2001) ("[W]hen an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit."). The court will address the merits of Formella's claim that Brady improperly denied his non-competitive transfer request.

## III.    Race and Age Discrimination

### A.    Racial Discrimination

#### 1. Discriminatory Employment Decisions

Under Title VII, it is unlawful for an employer to discriminate against an employee because of his race. 42 U.S.C. § 2000e-2(a)(1). Formella attempts to show racial discrimination using the familiar "indirect method." (*See* Pl.'s Resp. at 2-3.) As courts usually formulate the test, the plaintiff must establish a *prima facie* case of discrimination by showing that: "(1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 463 (7th Cir. 2014). The test is modified where, as here, the plaintiff is white:

> [W]here members of the majority group believe that they have been subjected to discrimination, rather than showing that they are members of a protected class, they must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something "fishy" about the facts at hand.

*Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1119 (7th Cir. 2009). If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to introduce a legitimate, nondiscriminatory reason for the employment action. *Widmar*, 772 F.3d at 463. To avoid summary

judgment, the plaintiff must then show that the defendant's stated reason is a pretext for discrimination. *Id.*

Formella has failed to establish a *prima facie* case of racial discrimination. In its opening brief, USPS correctly identified the standard that applies to claims of "reverse discrimination." (*See* Def.'s Mem. at 10-11.) Formella responds that he is a member of the "protected class" because he "was the only white candidate for the position." (Pl.'s Resp. at 2-3.) This argument is undeveloped and does not establish "background circumstances" suggesting that Brady — who is also white — was inclined to discriminate against a white candidate. *Nagle*, 554 F.3d at 1119. On its face, there is nothing "fishy" about the fact that Formella was the only white applicant. *Id.* With respect to the non-competitive transfer, Formella has also failed to identify a similarly situated employee who USPS treated more favorably. He states that USPS granted Sergeant Wyatt, an African American, a non-competitive transfer to a different tour in 2009. (*See* Pl.'s Resp. at 4.) He has not, however, cited evidence that the decision-maker gave Wyatt the position *after* it had already been posted.

Even if Formella had established a *prima facie* case of racial discrimination, USPS still would be entitled to summary judgment on that claim. USPS has articulated non-discriminatory reasons for denying Formella's transfer request and hiring Fields for the position: (1) Brady had already posted the vacancy when Formella requested a transfer; and (2) Fields gave a better interview than Formella. To establish that those reasons are pretext, Formella must show that Brady is lying when he says that he was motivated by something other than Formella's race. *See Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) ("[I]f a legitimate reason is produced, the employee must prove by a preponderance of the evidence that the employer's stated reason is a lie."). Formella points out that Brady could have removed the posting and given the position to him, and

he cites a written USPS policy that he argues demonstrates a preference for non-competitive transfers.[8] (*See* Pl.'s Resp. at 4; Pl.'s Stmt. of Add'l Facts ¶¶ 16-18.) Brady's *authority* to approve a non-competitive transfer is irrelevant to the question whether he fabricated his reasons for denying Formella's request. With respect to Brady's decision to hire Fields, Brady asked each candidate the same questions. Fields was qualified for the position and performed well during his interview with Brady. (*See* Def.'s Stmt. ¶¶ 10, 17-18.) By contrast, Brady concluded that Formella was less prepared and had an "entitlement attitude." (*See* Def.'s Stmt. ¶¶ 13, 16.) Brady's reasons for choosing Fields instead of Formella are credible. The court grants USPS summary judgment on Formella's racial-discrimination claim.

**2. Hostile Work Environment**

Formella claims that Captain Williams harassed him over a two-year period because Formella is white. (*See* Pl.'s Resp. at 6-8.) "Title VII prohibits the creation of a hostile work environment." *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014) (quoting *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2441 (2013)) (internal quotation marks omitted). To avoid summary judgment, Formella must produce evidence from which a reasonable jury could conclude that: (1) his work environment was both subjectively and objectively offensive; (2) his race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *See id.* Formella must also show that the alleged harassment had "a racial character or purpose," and not merely that

---

[8]/ Formella cites what appears to be at least a portion of USPS's "Handbook EL-312, Employment and Placement." (*See* USPS: Policy and Procedures that Govern Assignment, Reassignment and Promotion, attached to Oct. 2011 EEO Compl., at 8.) He cites a passage explaining that the handbook had been "rearranged to put noncompetitive procedures ahead of competitive procedures, consistent with the arrangement of other parts of Chapter 5, and in conformance with postal policy to provide first opportunity to current supervisors." (*Id.*) The substantive potions of the handbook state only that competitive procedures are "not required" when an employee requests a lateral transfer, and that noncompetitive applicants "may" be selected "at any point before or during the competitive process, or after a competitive package has been considered." (*Id.* at 10.)

his workplace was "contentious and inhospitable." *Lockhart v. St. Bernard Hosp.*, 538 F. A'ppx 720, 721 (7th Cir. 2013) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir.2004)) (internal quotation marks omitted). None of the conduct that Formella challenges is objectively offensive. He has not cited any racist comments or physical threats, explicit or implicit. He received reprimands for using profanity and wearing inappropriate attire at a management meeting. The court accepts Formella's statement that he found these experiences humiliating, but they are not *objectively* offensive. He argues that Captain Williams harassed him by scrutinizing his reports more closely than he did reports from Formella's African American peers, citing *Barth v. Village of Mokena*, No. 03 C 6677, 2006 WL 862673 (N.D. Ill. Mar. 31, 2006). Unlike the plaintiff in *Barth*, there is no evidence that Williams required Formella "to redo reports from scratch." *Cf. id.* at *20. He simply required him to correct admitted grammatical errors.[9] Also, the report issue in *Barth* was just one of many, more severe instances of harassment. *See id.* (explicit sexual comments, offensive touching, failure to provide police backup). Formella has not cited any conduct by Williams akin to the harassment that the plaintiff experienced in *Barth*. (*Cf.* Pl.'s Stmt. of Add'l Facts ¶¶ 1 (requiring him to punch the time clock), 7 (limiting his ePACS access), 12 (noting in his 2012 performance evaluation that he did not complete his L.E.A.D.S. certification on time), 13 (requiring him to perform postal carrier safety inspections).) It is unclear from the record how much Formella's payroll-related allegations impacted him financially.[10] Even if the court assumes that Captain

---

[9] (*See* Formella Dep. at 142 ("They were minor errors, where prior to that point he would always make the change to the report, bring it to me, and have me sign it, but now he was highlighting things in red, punctuation, mistakes, word spelling errors, that type of thing, which prior to that he never did.").)

[10] Captain Williams marked Formella "AWOL" when he attended a mandatory first-aid training, (see Pl.'s Stmt. of Add'l Facts ¶ 5), but he admits that USPS later paid him for that shift. (*See* Def.'s Stmt. ¶ 29.) His overtime allegations are not properly before the court. (*See supra..*)

Williams's conduct imposed a significant financial burden on Formella, it is not actionable harassment because there is no evidence that it was racially motivated. There must be "*some* connection" between his race and the alleged harassment. *Zayas v. Rockford Memorial Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) (emphasis in original). Here, there is none. The court grants USPS summary judgment on Formella's hostile work environment claim.

B.     Age Discrimination

Formella also claims that Brady denied his transfer request, and then selected Fields for the vacancy, because of his age. The Age Discrimination in Employment Act ("ADEA") prohibits age discrimination against individuals over 40. 29 U.S.C. § 633a. To survive summary judgment on his ADEA claim, Formella must "show evidence that could support a jury verdict that age was a but-for cause of the employment action . . . ." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012). The methods of proving age and racial discrimination are similar. *See Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014).

Formella attempts to show age discrimination using the indirect method. (*See* Pl.'s Resp. at 2.) He is a member of the protected class with respect to his ADEA claim: he was over 50 when he sought the vacant supervisor position. (*See* Oct. 2011 EEO Compl. at 1.) Otherwise, his age-discrimination claim fails for the same reasons his racial-discrimination claim fails. He has not established a *prima facie* case of discrimination with respect to his request for a non-competitive transfer. Formella again argues that Sergeant Wyatt's 2009 transfer is comparable. (Pl.'s Resp. at 3.) Even assuming that Sergeant Wyatt was younger than Formella when she received the transfer — and he has not cited evidence that she was — there is no evidence that the decision-maker had already posted the vacancy when he or she approved the transfer. Also, Formella has not cited

evidence supporting a finding that Brady fabricated his reasons for denying the transfer and hiring Fields. (*See supra*.) The court grants USPS summary judgment on Formella's ADEA claim.

## II. Retaliation

Formella argues that Williams retaliated against him for filing EEO complaints. "Retaliation may be established by either the direct or the indirect method of proof." *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 (7th Cir. 2014). Formella attempts to establish retaliation using both methods. (*Id.* at 8-10.)

### A. Direct Method

The direct method requires Formella to show: "(1) that he engaged in activity protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between [his] protected activity and the adverse employment action." *Moultrie*, 766 F.3d at 754.[11] An action is "adverse" in this context if "the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986-87 (7th Cir. 2014) (citation and internal quotation marks omitted). "'[P]etty slights, minor annoyances, and simple lack of good manners' do not suffice." *Id.* at 987 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). To satisfy the causation requirement, Formella must show that his protected conduct was the but-for cause of the adverse action. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

---

[11]/ USPS does not dispute that Formella's EEO complaints are protected activities.

### 1. Adverse Employment Action

Formella argues that the hostile work environment that Captain Williams fostered was itself a form of retaliation. (*See* Pl.'s Resp. at 9 ("Plaintiff suffered an adverse employment action in that he endured a hostile work environment.").) "The creation of a hostile work environment can be a form of retaliation." *See Smith v. Northeastern Illinois University*, 388 F.3d 559, 567 n.5 (7th Cir. 2004). In this case, however, the court has already rejected Formella's hostile work environment claim. *See Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998) ("Although retaliation can take the form of a hostile work environment, [*see Knox v. State of Ind.*, 93 F.3d 1327, 1334-35 (7th Cir. 1996)], we have already held that the terms and conditions of her employment were not affected by the shunning."). Formella has not attempted to show that any particular action would have dissuaded a "reasonable worker" from charging discrimination. Thus, he has waived any argument that particular actions were adverse.

Even if Formella had properly raised the issue, his laundry list of alleged retaliation contains only one arguably adverse action. (*See* Pl.'s Stmt. of Add'l Facts ¶ 6 (Formella was required to take an extra week of accrued sick leave to obtain a second doctor's note).) The two events closest in time to his initial complaint are: (1) Williams's decision to require sergeants to punch the time clock at the beginning of their shift; and (2) the extra scrutiny that he began applying to Formella's reports. Williams required *all* sergeants to punch-in, not just Formella. (*See* Def.'s Stmt. ¶ 20.) Even if Williams had singled him out, it only took a few seconds to punch the clock. (*Id.*) His claim that Williams scrutinized his reports more closely after his initial EEO complaint is also trivial. Formella appears to concede that the corrections were appropriate, (*see supra* n.8), and there is no evidence that they had any "tangible job consequences." *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir.

2010) ("[T]his Court has previously held that 'unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions.'") (quoting *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001)). Formella testified that, prior to January 2012, all sergeants were authorized to use USPS's ePACS system. (*See* Formella Dep. at 126-27.) Then, USPS instituted a new policy limiting the number of authorized employees to two. (*See* Def.'s Stmt. ¶ 27.) Captain Williams designated himself and Sergeant Wyatt. (*Id.*) When Wyatt took an extended leave of absence, Fields had access to the system. (*Id.*) Formella argues that he no longer had "proper access" to do his job, (Pl.'s Stmt. of Add'l Facts ¶ 7), but there is no evidence that it was anything more than a minor inconvenience. (*See* Formella Dep. at 128 ("[N]ow I would have to ask the captain or Sergeant Wyatt for assistance to do that function now."). In April and May 2012, Captain Williams ordered Formella to perform postal carrier safety checks. (Def.'s Stmt. ¶ 22; Pl.'s Stmt. of Add'l Facts ¶ 13.) Formella does not argue that it was an onerous assignment; he simply states that he was the only sergeant that Captain Williams required to perform this work. (*See* Pl.'s Stmt. of Add'l Facts ¶ 13.) At some point during 2012, Williams marked Formella "AWOL" on a day when Formella attended mandatory first-aid training. (Def.'s Stmt. ¶ 29.) Williams did not discipline Formella, and he later received overtime pay for the shift. (*Id.*)

In October 2012, Captain Williams required all sergeants to complete L.E.A.D.S. certification by November 2, 2012. (Pl.'s Stmt. ¶ 12.) Formella, the only sergeant who needed to renew his certification at that time, did not renew his certification before the deadline "due to a non-functioning access code." (*Id.*) Williams noted Formella's failure to meet the deadline in his 2012 evaluation. (*Id.*) There is no evidence that Williams was responsible for the faulty code, that it was

a significant blemish on Formella's record, or that it had any tangible job consequence. *See Jones*, 613 F.3d at 671. Finally, Formella claims that Lieutenant Nieters "improperly accused [him] of incorrectly marking an officer with an LWOP." (Pl.'s Stmt. of Add'l Facts ¶ 14.) The portion of Nieters's testimony that he cites does not support this statement. (*See* Nieters Dep., attached as Ex. D to Pl.'s Stmt. of Add'l Facts, at 42-43 (testifying only that Formella had incorrectly "LWOP'd" one of his officers).) Even if he had properly supported this statement, a simple reprimand — even if undeserved — would not dissuade a reasonable worker from filing an administrative claim for discrimination. *See Jones*, 613 F.3d at 671.

### 2. Causation

As the court previously noted, Captain Williams's refusal to accept Formella's doctor's note is the closest Formella comes to identifying an adverse employment action. Unlike the other alleged acts of retaliation, it appears to have had some financial impact on Formella. His argument that Williams refused to accept the note *because* he filed an EEO complaint rests entirely on the timing of the two events: Williams was his direct supervisor starting in 2006, but he did not start harassing Formella until 2011. (*See* Pl.'s Stmt. of Add'l Facts ¶ 10.) "Under most circumstances, suspicious timing alone does not create a triable issue on causation." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). It does not create a triable issue here. Formella's argument that Williams did not harass him before 2011 is conclusory, and it is insufficient simply to say that the alleged retaliation occurred *after* he filed his complaint. To be suspicious, the employment action must follow "close on the heels of the protected expression." *Greengrass v. International Monetary Systems Ltd.*, — F.3d —, 2015 WL 137891, *5 (7th Cir. Jan. 12, 2015) (slip op.) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (internal quotation marks omitted). Williams

refused to accept the note in August 2012, ten months after Formella filed his formal EEO complaint accusing Williams of retaliation. This is well beyond the time periods that the Seventh Circuit has considered suspicious. *See, e.g., Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four months too long). And Formella has not cited any additional evidence that would support the inference that the two events are related.

### B. Indirect Method

Under the indirect method, Formella must show that he: "(1) engaged in statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity." *Moultrie,* 766 F.3d at 755 (7th Cir. 2014). As the court just discussed, Williams's refusal to accept the doctor's note is the only alleged act of retaliation that is arguably adverse. Formella cannot establish a *prima facie* case of retaliation with respect to that incident because he has not identified any similarly situated employee. Even if he had established a *prima facie* case, USPS has articulated a non-discriminatory reason for the action: the note that Formella submitted did not comply with the Employee and Labor Relations Manual. (*See* Def.'s Stmt. ¶ 26.) Formella has not cited any evidence to support the conclusion that Williams's stated reason is pretext for retaliation. The court grants USPS summary judgment on Formella's retaliation claim.

## **CONCLUSION**

For the foregoing reasons, the court grants USPS's motion for summary judgment [32].

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/29/2015